.ERNEST G. FOSS *v.* DANIEL P. SMITH.

October Term, 1906.

Present: ROWELL, C. J., TYLER, WATSON, HASELTON, and MILES, JJ.

Opinion filed January 10, 1907.

*Assumpsit—Evidence—Value—Photographs — Argument of Counsel—Reversible Error—Appealing to Jury's General Experience—New Trial—Newly Discovered Evidence—Receipt—Cumulative Evidence—Due Diligence.*

Where the record does not disclose the ground upon which offered evidence was excluded, and there is any ground to justify the court's action, error does not appear.

In assumpsit on a promissory note, where it became material on the question of payment to show the value of the furniture in a certain hotel about the time the note was given, the exclusion of a seasonably taken and properly verified photograph of the hotel

parlor and the furniture in it does not show error, the ground of the exclusion not appearing; for the photograph could show little or nothing of the kind and quality of the material of which the furniture was made, which were very essential elements of its value; and the amount of evidence on the question of value might have been such that the court thought it not needful to cumulate it further by such slight and uninstructive evidence.

In assumpsit on a promissory note which, during most of the time before suit, was pledged by plaintiff as collateral, and which defendant claimed he had paid within a few days after it was given, it was proper to allow defendant to testify that he never had notice that his note was held as collateral, as tending to prevent an inference of notice from his silence, which would have made against his testimony that he had forgotten for three years that he had given the note.

In civil cases, considerable latitude is allowed counsel in commenting upon the parties from the evidence. It is when they transgress the evidence that the line is sharply drawn.

In argument to the jury, defendant's counsel, without provocation, incorrectly quoted plaintiff's counsel as having said of plaintiff, in the opening argument, 'Granted that he is a knave,' and added, "and I guess it is generally granted." Whereupon, after objection and exception, he again thus incorrectly quoted. plaintiff's counsel and added, "and I don't dispute it." *Held*, not to require reversal; for, though plaintiff's counsel was incorrectly quoted, the jury knew that, and could not be misled by it; and defendant's counsel stated nothing as a fact, but only as a "guess," and as an assent to what he incorrectly represented plaintiff's counsel as having said.

Although there was no evidence on that subject, it was proper for counsel to appeal to the general experience of the jury by arguing that, as a matter of common knowledge, it is easier to copy or simulate handwriting with a lead pencil than with a pen.

On a petition for a new trial on the ground of newly discovered evidence, brought by the plaintiff, who was cast in a suit in assumpsit on a promissory note for $1,750, dated June 15, 1901, it appeared that on the trial defendant claimed that the note had been overpaid by his stock and farming tools which he transferred to plaintiff on June 17, 1901, to apply on the note, in accordance with a hotel-farm trade between the parties, made June 13, 1901, but that he did not then take up the note, and straightway forgot

for three years that he had given it; that it was conceded that said stock and farming tools were transferred to plaintiff, but he claimed that this was on June 14, 1901, the day before the note was given, and to apply on the price of the hotel furniture. *Held* that, in the circumstances, a new trial should be granted because of the discovery in the town clerk's office, a few days after the trial, of a receipt signed by both parties, dated June 17, 1901, and stating that on June 14, 1901, defendant received of plaintiff his pay in full for seven calves, fifteen hogs and pigs, and $100 on stock, leaving $180 due defendant, to be applied on a certain note for $1,750, dated June 15, 1901; it appearing that defendant took no testimony in defence of the petition, and does not dispute that he signed the receipt.

The receipt is not cumulative evidence, for it is a deliberate admission by defendant that the note was not paid as he claims, and no such admission was shown at the trial.

It appearing that, in preparing his case for trial, at the request of his counsel, plaintiff and his wife made diligent search for the receipt among all his papers, but could not find it, and then concluded that he either never had one or had lost it; that it was unexpectedly discovered by the town clerk, after the trial, while searching for other papers at plaintiff's request, plaintiff was not in fault in not having the receipt at the trial, nor in not moving for a continuance because he did not have it.

GENERAL ASSUMPSIT. Pleas, the general issue, payment, and plea in offset.    Trial by jury at the December Term, 1905, Lamoille County, *Munson,* J., presiding.    Verdict and judgment for the defendant.    The plaintiff excepted.

Under his counts in general assumpsit plaintiff sought to recover the amount due on a promissory note for the sum of $1,750, dated June 15, 1901, payable to the plaintiff or bearer, and signed by defendant.    The defendant admitted that he executed said note and that he delivered the same to plaintiff; but defendant claimed, and his evidence tended to show, that he had paid said note by selling to the plaintiff to apply thereon defendant's farming tools, cows, horses, and other stock

and personal property on his farm in Stowe, Vermont, in accordance with one of the stipulations in the hotel-farm trade hereinafter referred to. It appeared that on Thursday, June 13, 1901, at Morrisville, Vermont, plaintiff and defendant entered into a verbal contract, in accordance with which at Morrisville on Saturday, June 15, 1901, the plaintiff and his wife by warranty deed of that date conveyed to defendant the Hotel Lamoille and the real estate connected therewith, situated at said Morrisville, together with all the furniture therein—except $200 worth of furniture—and defendant executed and delivered to plaintiff said note for $1,750; it also appeared that on Monday, June 17, 1901, at Stowe, in accordance with the stipulations of said verbal contract, defendant and his wife executed and delivered to plaintiff a warranty deed of defendant's farm, situated in Stowe, together with all the farming tools and machinery, forty-two cows, and a pair of horses and certain other personal property on said farm, and at the same time at Stowe, in accordance with the terms of said verbal contract, plaintiff purchased of defendant, seven calves and fifteen hogs and pigs. A vital question in the trial was: What were the terms of said hotel-farm contract, in accordance with which said property was exchanged? The answer to this question determined whether said note of $1,750 was still due and wholly unpaid, as plaintiff claimed, or was fully paid, as defendant claimed.

Plaintiff claimed, and his evidence tended to show, that said hotel-farm trade was as follows: Plaintiff was to exchange his said hotel property at Morrisville—the real estate alone without the hotel furniture—for defendant's said farm, in Stowe and $1,750 to boot, represented by the note in question; that defendant in addition purchased all the plaintiff's

furniture in said hotel—except $200 worth of furniture—for the sum of $1,700, and that defendant was to pay this $1,700 by selling to plaintiff, who agreed to buy at an appraisal to be later made, all of defendant's farming tools and stock; and that if said appraisal came to less than $1,700, defendant was to pay plaintiff the difference; if said appraisal came to more than $1,700, plaintiff was to pay defendant the difference. Defendant claimed, and his evidence tended to show, that said hotel-farm trade was as follows: 'Defendant was to give his said farm—no personal property included—and $1,750, represented by the note in question, for plaintiff's said hotel property and all the furniture therein, except $200 worth of furniture, and that plaintiff was to purchase from the defendant all of defendant's farming tools and stock at an appraisal to be made later, which purchase was to be applied in payment of the $1,750 boot between defendant's farm and plaintiff's hotel and furniture.

It was conceded in said trial that the note in question and said deed of the hotel property and furniture from plaintiff and wife, were each duly executed and delivered at Morrisville on Saturday, June 15, 1901, and that the deed of defendant and his wife, conveying said Stowe farm and personal property to plaintiff was executed at Stowe, June 17, 1901, and was then and there drafted by Mrs. Alice Raymond, the town clerk of the town of Stowe. The evidence of plaintiff tended to show that on Friday, June 14, 1901, he went to defendant's farm in Stowe, there met defendant, and that they then and there agreed upon the value of all of defendant's farming tools and stock; that said appraisal came to more than $1,700, the agreed price of said hotel furniture; that he paid defendant in full for 7 calves and 15 hogs and pigs, and paid him also the

sum of $100 on the other stock so appraised, which left a
balance of $180 due defendant on the appraisal after paying
for the hotel furniture therewith at $1,700. The defendant
claimed, and his evidence tended to show, that said appraisal
of stock and farming tools did take place at his farm in Stowe,
but that it took place on Monday, June 17, 1901, in the
morning and not on Friday, June 14, 1901. So it be-
came a vital question in the trial of said cause at what date
said appraisal of the personal property took place, whether on
June 14, 1901, as claimed by the plaintiff, or on June 17, 1901,
as claimed by the defendant. Because, if the appraisal took
place on June 14, 1901, as claimed by the plaintiff, the per-
sonal property would not have been likely to have been used
to pay the note of $1,750, because that note was not executed
until Saturday, June 15, 1901, as both parties agreed and as
the note itself shows. The defendant claimed, and his evi-
dence tended to show, that the appraisal amounted to about
$2,200, enough to pay the note in question of $1,750, upon
which the defendant's evidence tended to show it was agreed
the appraisal should be applied, and left a balance of between
$400 and $500 due from plaintiff to defendant, for which de-
fendant had never received his pay, and which balance formed
a part of defendant's specifications under his plea in offset.
It appeared that defendant never demanded the note in ques-
tion from plaintiff till the summer of 1904. Defendant tes-
tified that the reason he had never demanded the note was that
he had entirely forgotten that he had ever given the same; that
the reason he did not demand said note on June 17, 1901, when
he and his wife executed the deed of said Stowe farm to
plaintiff, and at which time defendant claimed that it was
paid by the appraisal and sale of said personal property, was

that he had then entirely forgotten that he had given the note in question, that he had forgotten that he had given it in a few hours after it was given, and never remembered that he had given it until the summer of 1904, when the person who drafted the note and the deed from plaintiff and wife to defendant on June 15, 1901, refreshed his memory about it, and that then for the first time he remembered that he had given said note.

The plaintiff introduced his wife as a witness, and after showing that she was well acquainted with said hotel and all the furniture therein at the time of said hotel-farm trade, plaintiff produced a photograph of the parlor of said hotel and the furniture therein at the time of said hotel-farm trade, and offered to show by the witness that it was an accurate representation and picture of said parlor and said furniture, showing the character and condition of the same as they existed at the time of said hotel-farm trade. Said offer was excluded, to which the plaintiff excepted. Thereupon the plaintiff offered in evidence said photograph, which offer was excluded, to which plaintiff excepted.

The evidence of defendant tended to show that in June, 1904, he spoke to plaintiff and asked him if it was true that plaintiff held the note in question against him; that plaintiff answered that it was true that he held said note; that thereupon defendant said to plaintiff that said note had been paid with said farming tools and personal property, and that plaintiff then replied that it was true that said note had thus been paid. In reply to this, plaintiff introduced evidence of himself and Mr. Hulburd and Mr. Cheney tending to show that as early as May, 1904, and before this alleged demand in June, 1904, plaintiff had retained said Hulburd and Cheney to bring suit against the defendant upon this note.

Referring to this matter in argument Mr. Redmond said, in substance, that plaintiff would have been a fool to have told the defendant in June, 1904, that said note was paid, when he had then retained counsel to bring suit thereon; that although the other side might claim that plaintiff was a knave they would not claim that he was a fool.

Referring to these remarks of Mr. Redmond, Mr. Senter, counsel for the defendant, in his argument to the jury, under objection and exception of the plaintiff, said: "Mr. Redmond said to you, gentlemen of the jury, 'granted that he, Foss, is a knave' *and I guess it is generally granted,"* immediately after an objection was interposed to this remark of Mr. Senter and exception noted, Mr. Senter continued, under the objection and exception of the plaintiff: "And I repeat, gentlemen," Mr. Redmond says 'granted Ernest Foss is a knave' and I don't dispute it.' "

The plaintiff also brought a petition for a new trial to the Supreme Court for Lamoille County, at the October Term, 1906, under V. S. 1662, on the ground of newly discovered evidence; and the petition was heard with the exceptions on the affidavits thereto attached.

*J. W. Redmond, R. W. Hulburd,* and *Thomas C. Cheney* for the plaintiff.

It was error to exclude the photograph. *Lake Erie, Etc. R. Co.* v. *Wilson,* 189 Ill. 89; *Com.* v. *Morgan,* 159 Mass. 375; *Wabash R. Co.* v. *Prast,* 101 Ill. App. 167; *Udderzook* v. *Com.,* 76 Pa. St. 340; 1 Wig. Ev. §§790, 792; *Marcy* v. *Parker,* 78 Vt. 73; *Hale* v. *Rich,* 48 Vt. 217.

The newly discovered evidence is clearly and vitally material, and of such a character as to convince this Court that

injustice has been done the petitioner, and that a new trial will change the result. This test is generally conclusive. *Gilman* v. *Nichols,* 42 Vt. 313; *Beckwith* v. *Middlebury,* 20 Vt. 593; *Briggs* v. *Gleason,* 27 Vt. 116.

The newly discovered evidence is not cumulative. *Bradish* v. *State,* 35 Vt. 452; *Parker* v. *Hardy,* 24 Pick. 246; *Golworthy* v. *Linden,* 75 Wis. 24; *Wilson* v. *Plank,* 41 Wis. 94; *Walker* v. *Graves,* 20 Conn. 305; *Guyott* v. *Butts,* 4 Wend. 579; *German* v. *Maquoketa Sav. Bank,* 38 Ohio 368; *Boggess* v. *Read* 83 Iowa 548; *Myers* v. *Brownell,* 2 Aik. 406; *Leavy* v. *Roberts,* 8 Wis. 310; *Burr* v. *Palmer,* 23 Vt. 246; *Barkers* v. *French,* 18 Vt. 460.

Even if the evidence is cumulative, a new trial will be granted where there is, as here, a strong probability that injustice has been done. *Smith* v. *Graves,* 74 Wis. 171; *Hart* v. *Brainer,* 68 Conn. 50; *Keet* v. *Mason,* 167 Mass. 154; *Volkommer* v. *Nassau Electric R. Co.,* 23 N. Y. App. 88.

*V. A. Bullard, John H. Senter,* and *F. G. Fleetwood* for the defendant.

The court did not err in rejecting the photograph. The use of photographs is largely for explanation, and not to prove value. 1 Greenl. Ev. (16 ed.) 439.

Counsel may argue such conclusions from the testimony as he pleases, provided he does not misquote witnesses. 2 Enc. Pl. & Pr. 716; *Guiltinan* v. *Ins. Co.,* 69 Vt. 469; *Amsden* v. *Atwood,* 69 Vt. 527.

To warrant a reversal because of the wrongful argument of counsel, it must appear probable that the jury were influenced thereby. *Buscher* v. *Scully,* 107 Ind. 246, 8 N. E. 37; *Galveston Ry Co.* v. *Croskell,* 6 Tex. Civ. App. 160, 25

S. W. 486; *West. Union Tel. Co.* v. *Jobe,* 6 Tex. Civ. App. 403, 25 S. W. 168; *Tucker* v. *Cole,* 54 Wis. 539, 11 N. W. 703; *Dorset* v. *Clother,* 35 Ill. App. 231; *Billings* v. *Ins. Co.,* 70 Vt. 478; *Morrill* v. *Palmer,* 68 Vt. 1.

The receipt is but cumulative evidence; it is only evidence of the same kind and quality as that used on the trial, and for that reason a new trial should be denied. *Briggs* v. *Gleason,* 27 Vt. 114; *Middletown* v. *Adams,* 13 Vt. 285; *Dodge* v. *Kendall,* 4 Vt. 31; *Bullock* v. *Beach,* 3 Vt. 73; *Kirby* v. *Waterford,* 14 Vt. 414; *Gilman* v. *Nichols,* 42 Vt. 313; *Waters* v. *Langdon,* 16 Vt. 570; *Stearns* v. *Allen,* 18 Vt. 119; *Linsley* v. *Danville,* 55 Vt. 72.

Rowell, C. J.  The 1750-dollar note in question, dated June 15, 1901, was given by the defendant for boot in a hotel-farm trade between the parties.  The defendant claimed it was paid.  That depended upon whether he was to have the hotel furniture with the hotel for that amount of boot, as he claimed, and whether the note was to be, and was, paid in his stock and farming tools, as he further claimed; or whether he was not to have the furniture thus, but was to buy it separately at $1,700, and pay therefor in his stock and farming tools, as the plaintiff claimed.

It appeared that the parties met and agreed upon the price of the stock and tools, but they did not agree when it was. Plaintiff's evidence tended to show that it was on Friday, June 14, the day after the bargain was made, and the day before the note was given; while the defendant's evidence tended to show that it was on Monday, June 17, the day he deeded his farm to the plaintiff.  The plaintiff's evidence further tended to show that the price of the stock and the tools was more

than enough to pay the $1,700 for the furniture, which, by agreement, was paid in full thereout, and that the plaintiff then paid the defendant in cash for seven calves and fifteen hogs and pigs, and $100 to apply on other stock, leaving a balance of $180 due the defendant, which, by agreement, was, on July 1, 1901, indorsed on a note the plaintiff held against the defendant for $1,380, known as the Smith & McCollister livery note. Defendant's evidence tended to show that the $180 indorsed on that note represented a cash payment by him, and did not represent what the plaintiff claimed it did.

It appeared that during most of the time before suit brought, the plaintiff had the note in question up as collateral, but there was no evidence that the defendant knew it.

As tending to show what the trade was, the plaintiff introduced evidence of the value of the hotel and the furniture and of the farm and the stock and tools at the time of the trade. The plaintiff produced a photograph of the hotel parlor and the furniture in it, taken at the time of the trade, and offered to verify it and put it in evidence, which was denied him, but on what ground does not appear. If there is any ground to justify the court's action, error does not appear, and we think there is a ground; for while the photograph might show the form and fashion of the furniture, and something of its condition, it could show little or nothing of the kind and quality of the material of which it was made, which were very essential elements of its value, and the amount of evidence on the question of value might have been such that the court thought it not needful to cumulate it further by testimony so slight and uninstructive as that afforded by the photograph.

The defendant was allowed to testify that he never had notice that his note was held as collateral. The plaintiff

argues that this was error, for that the testimony could have no other tendency than to induce an inference of no pledge from the fact of no notice, which would be *res inter alios*. The exceptions do not show the purpose for which the testimony was received, but it had a tendency to prevent an inference of notice from the defendant's silence, and such an inference would have made against his testimony about having forgotten for three years that he gave the note. For this purpose the testimony was admissible, and is not argued against.

Mr. Bullard's argument to the jury as to the dangerous character of the plaintiff was based upon the testimony, and was not so unwarranted by it as to be error. In civil cases, considerable latitude is allowed counsel in commenting upon the parties from the testimony. It is when they get outside of the testimony that the line is sharply drawn.

Mr. Senter's argument was not provoked by Mr. Redmond's, and he incorrectly stated what Mr. Redmond said; but the jury knew that, and would not be misled by it. Mr. Senter stated nothing as a fact, but only as a guess, and as an assent to what he represented Mr. Redmond as saying. While this was not a style of advocacy to be commended, it was not so vicious as to require reversal. If he had asserted as a fact what he said as a guess, it might have been different.

His argument that as matter of common knowledge it is easier to copy or simulate handwriting with a lead pencil than with a pen, was but appealing to the general experience of the jury as to the comparative facility with which those instruments can be used, a matter concerning which they might well be supposed to have some practical knowledge.

The petition for a new trial is based upon the finding of a receipt in the town clerk's office in Stowe a few days after

the trial, made and dated June 17, 1901, the day the defendant deeded his farm to the plaintiff, and signed by both parties, stating that on June 14, 1901, the defendant received of the plaintiff his pay in full for seven calves, fifteen hogs and pigs, and $100 on stock, leaving $180 due the defendant, to be applied on a certain note for $1,750, dated June 15, 1901.

As already appears, the parties differed widely as to what the trade was, and much testimony was introduced in support of their respective claims, coming largely from witnesses who undertook to reproduce from unaided memory what they claimed to have heard the parties say about it several years before the trial. It became and was material to show when the parties met and agreed upon the price of the defendant's stock and farming tools, whether it was on Friday, June 14, as the plaintiff claimed, or on Monday, June 17, as the defendant claimed, concerning which there was much testimony on both sides; some, mere matter of unaided memory; some, memory refreshed by incident; and some, memory refreshed by memorandum and incident.

The defendant took no testimony in defence of the petition, and does not deny that he signed the receipt, that it was read to him, and left with the town clerk, as she says in her affidavit. This receipt is strongly corroborative of the plaintiff's claim, and amounts to a deliberate admission by the defendant that the stock and tools were appraised on the 14th, and paid for then into $180 in some way other than by application on the note in question, which is thereby expressly recognized as outstanding and unpaid; from all which the inference is strong that the bulk of the appraisal was applied in payment for the furniture, as the plaintiff claims, for there was nothing else to apply it on. But though that $180 were never

applied on that note, yet that is accounted for by the plaintiff
by the receipt of July 1, 1901, purporting to be signed by the
defendant, acknowledging the receipt of that $180, to settle
in full for all the personal property the plaintiff bought of
him on his farm, and reciting that that amount had been that
day indorsed on the Smith & McCollister livery note.   True,
the defendant denies that the $180 indorsed on that note that
day grew out of their trade in any way, but says that the in-
dorsement represents a cash payment by him, and that that
receipt is a forgery, and he so testified.

But when we consider the character and conflict of the
testimony; the fact that the note in suit is still in the plaintiff's
possession; the unlikelihood that he would admit it paid, as
claimed, when he had but recently employed counsel to com-
mence suit upon it; the unsatisfactory reason the defendant
gives for not taking it up if he paid it as claimed, as he was
not a man of such ample fortune that he would be likely to give
a 1750-dollar note and straightway forget it and not think of it
again for three years, as he testified, but which is refuted by the
receipt of June 17; and when we further consider that the bur-
den of showing payment rests upon him; that he has to claim
forgery, a thing presumed against, in order to overcome the
receipt of July 1, and that the testimony strongly tended to
show that the plaintiff's property was worth considerable more
than the defendant's property, we think that with the receipt
of June 17 in the case, there would be a strong probability
of a different result on another trial.

Nor is said last-mentioned receipt cumulative evidence,
for it is a deliberate admission by the defendant that the note
was not paid as he claims, and no such admission was shown
on trial.

Nor was the plaintiff in fault in not having the receipt at the trial, nor in not moving for a continuance because he did not have it. When preparing his case for trial, he was under an impression that he had some sort of a receipt from the defendant concerning his farming tools and stock that formed a part of the trade, and at the request of his counsel he and his wife made diligent search for it among all of his papers, but could not find it, and then concluded that he either never had one or had lost it. Right after the trial he went to the town clerk's office in Stowe to see if there was anything there to show why his deed from the defendant was not recorded till twelve days after it was given, and in looking for such a paper the town clerk found the receipt, which she had entirely forgotten about, and which she had not seen since it was left with her by the parties at the time it was signed, and which the parties had not seen, and the plaintiff had forgotten that it was left there, but as soon as it was found, he remembered about it.

*Judgment of no error on trial, but judgment below reversed pro forma, petition sustained with costs, verdict set aside, new trial granted, and cause remanded.*